UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISABEL M. LOPERA, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>THE RECEIVABLE MANAGEMENT SERVICES CORP.,<br><br>        Defendant. | Civil Action No. 1:12-cv-09649 |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

Plaintiff Isabel Lopera ("Plaintiff"), by and through undersigned counsel, respectfully request that the Court grant this Motion for Preliminary Approval of Class Action Settlement with The Receivable Management Services Corp., ("RMS" or "Defendant") and enter the proposed order submitted herewith. RMS does not oppose the relief sought by this motion. In support of this motion, Plaintiff states as follows:

### I.    INTRODUCTION

1.    Plaintiff, on behalf of herself and all others similarly situated, filed a Class Action Complaint against Defendant on December 4, 2012. [Doc. 1.] The complaint alleged RMS violated the Telephone Consumer Protection Act, 37 U.S.C. §227, ("TCPA") by placing telephone calls to Plaintiff and the class members on cellular telephones via an automated telephone dialing system ("ATDS"). The parties have conducted discovery regarding these claims and, as part of that discovery, identified approximately 11,733 cellular telephone numbers to which RMS placed a non-emergency telephone call using an automated dialer after obtaining that number from a third party skip trace company between January 5, 2012 to August 1, 2012.

Plaintiff and RMS dispute whether (a) the putative class members—subscribers or users of the cellular telephone numbers at issue above—consented to the subject calls; (b) the putative class members agreed to individually arbitrate their TCPA claims against RMS; (c) the automated dialer constitutes an ATDS under the TCPA; and (d) whether this action is suitable for class certification.

2. After a full-day mediation before the Honorable Morton Denlow (Ret.) of JAMS and subsequent negotiations, Plaintiff and RMS have agreed to the settlement agreement attached hereto as *Appendix 1* (the "Settlement Agreement"). The Settlement Agreement requires RMS to pay up to one million, five hundred thousand dollars ($1,500,000) into a settlement fund (the "Fund"), out of which class members who file valid and timely claims will receive a cash award not to exceed one hundred twenty-five dollars ($125) in exchange for a release of all claims under the TCPA and state law that arise out of the calls at issue in this action. In the Settlement Agreement, RMS also represents and warrants that it has revised and implemented improved procedures to avoid calling cellular telephone numbers through the use of an automated dialing system in the absence of consent.

3. With this motion, Plaintiff seeks preliminary approval of the Settlement, and provisional certification of a Settlement Class for the purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object or otherwise be heard. The proposed Settlement is fair, reasonable and adequate and satisfies all criteria for preliminary settlement approval under Seventh Circuit law. For these reasons, and as set forth below, Plaintiff respectfully requests that the Court take the following initial steps in the settlement approval process: (a) preliminarily approve the proposed Settlement as fair, adequate and reasonable; (b) conditionally certify the Settlement Class for settlement purposes; (c) appoint Isabel M. Lopera

as class representative; (d) appoint Class Counsel; and (e) approve sending the proposed Class Notice.

## II. BACKGROUND

### A. The Claims At Issue In This Action

4. Isabel M. Lopera filed a Class Action Complaint against RMS on December 4, 2012. [Doc. 1.] The complaint alleged claims under the TCPA.

5. Plaintiff and Class Counsel investigated the facts and law underlying the claims asserted in the Action. Plaintiff and Class Counsel requested, and RMS produced, data and documents regarding Plaintiff's claims and RMS's policies, practices and procedures concerning use of its dialers and the number of persons that may have been called. Class Counsel have engaged in numerous discussions with RMS's counsel regarding those claims and conducted Rule 30(b)(6) depositions in Washington DC of RMS's corporate witnesses. RMS conducted the depositions of Plaintiff, her husband and her father.

6. Plaintiff retained two experts who provided their reports in support of class certification. After Plaintiff filed her motion for class certification, which attached the experts reports in support, and after the deposition of one of those experts, this Court modified the pending briefing schedule on December 12, 2013, for Plaintiff's Motion for Class Certification to permit the Parties to attend a scheduled JAMS mediation. [Doc. 84.]

7. On December 16, 2013, the Parties attended a JAMS mediation before Hon. Morton Denlow (Ret.). Although the parties were unable to resolve the case on December 16, 2013, they continued to negotiate with the assistance of Judge Denlow.

8. Ultimately, the Mediation and subsequent negotiations led by the Hon. Morton Denlow (Ret.) of JAMS were successful.

9. Counsel for Plaintiff have reviewed and analyzed the legal and factual issues presented in this action, the information provided by Defendant in discovery, and considered the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through settlement, the protracted nature of the litigation, and the likelihood, costs and possible outcome of one or more procedural and substantive appeals. While Plaintiff believes that she has a strong case, she also recognizes that RMS has viable defenses. Based on that review and analysis, Counsel for Plaintiff believes that the terms of the Settlement are fair, reasonable, and adequate.

10. RMS vigorously denies all claims asserted in the Action and denies all allegations of wrongdoing and liability. RMS desires to settle the Action on the terms set forth herein solely for the purposes of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings.

**B. The Proposed Settlement**

11. The details of the settlement are contained in the Settlement Agreement. For purposes of preliminary approval, the following summarizes the Settlement Agreement's primary terms:

  a. RMS has agreed to pay up to one million, five hundred thousand dollars ($1,500,000). This amount covers all class benefit payments, settlement administration costs (estimated at $150,000), attorneys' fees and litigation costs (up to $450,000), and class representative incentive award (up to $5,000).

  b. Each class member who submits a claim form will receive one hundred twenty-five dollars ($125) or a *pro rata* share of the Fund if the amount of the Fund remaining after Settlement Costs are deducted is insufficient to pay each class

member $125. Settlement Costs include (i) any award of attorneys' fees and costs to Class Counsel approved by the Court; (ii) any class representative incentive award to Plaintiff approved by the Court; and (iii) the Settlement Administrator Settlement Administration Costs, including notice, reverse look up, publication notice and administrative costs.

12. Plaintiff and Class Counsel believe that the settlement of this action on the terms and conditions summarized above and set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interests of the putative class members.

13. Solely for the purpose of settlement in accordance with the Settlement Agreement, and pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff requests this Court provisionally approve the following settlement class ("Settlement Class"):

> All persons in the United States who were the user or subscriber of a cellular telephone number to which RMS placed a non-emergency telephone call using an automated dialer after obtaining that number from a third party skip trace company between January 5, 2012 to August 1, 2012. RMS and Plaintiff agree that there are 11,733 unique cellular telephone numbers associated with persons in the Settlement Class.

### III.   ARGUMENT AND AUTHORITY

#### A. Class Action Settlement Approval Process

14. Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions §11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92

4

C 4374, 1995 WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

15. As the Seventh Circuit recognizes, courts generally favor settlements of class actions:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, '"there is an overriding public interest in favor of settlement."' Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

16. District court review of a class action settlement proposal is a two-step process. At the preliminary approval stage, the question for this Court is whether the settlement falls within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising Class Members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). Newburg, *supra*, at §11.41. If the district court preliminarily approves a class action settlement, it then proceeds to the second step in the review process, the fairness hearing. Manual for Complex Litigation (Fourth) §21.633 (2004).

17. In assessing the fairness, reasonableness and adequacy of a settlement, courts consider the following factors: (a) the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement; (b) the defendant's ability to pay; (c) the complexity, length and expense of trial; (d) the presence of collusion in reaching a settlement; and (e) the

5

stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F.2d at 314, (citations omitted); *Synfuel Techs., Inc.*, 463 F.3d at 653; *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979) (citations omitted); *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Of these considerations, the first is most important. *Synfuel Techs., Inc.*, 463 F.3d at 653.

18. With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. Granting preliminary approval of this Settlement will allow all Class Members to receive notice of the proposed Settlement's terms and the date and time of the Final Approval Hearing, at which Settlement Class Members may voice their approval of or opposition to the Settlement, and at which the parties and Settlement Class Members may present further evidence and argument concerning the fairness, adequacy and reasonableness of the Settlement. Manual for Complex Litigation (Fourth) §§ 13.14, 21.632 (2004).

### B. The Court Should Preliminary Approve The Settlement.

#### 1. The Settlement Resulted From Extensive Arm's Length Negotiations And Is Not The Product Of Collusion.

19. As a leading treatise on class action jurisprudence explains, "decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684, 9 Fed. R. Serv. 3d (LCP) 909 (7th Cir. 1987) (approved settlement upon finding of no "hankypanky" in negotiations). There usually is an initial presumption that a proposed

6

settlement is fair and reasonable when it was the result of arm's length negotiations. Newberg, §11.42.

20. As detailed above, the Settlement is the result of a day-long mediation before Judge Denlow (Ret.) and was the result of extensive, arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class actions. Counsel for both parties are also experienced in litigating TCPA claims and understand the legal and factual issues involved in this case. In the course of negotiating the Settlement, the parties exchanged detailed mediation briefs and engaged in a full-day mediation session before an experienced former federal judge.

21. Also, as detailed above, Class Counsel thoroughly investigated and analyzed Plaintiff's TCPA claims and conducted written and oral discovery, including producing two expert reports, to identify the class and prosecute the class claims. The discovery consisted of contested discovery motions, written discovery requests, and depositions of RMS's corporate representatives pursuant to Rule 30b(6) in Washington DC, depositions of plaintiff, plaintiff's husband and father. Through this discovery, Class Counsel learned information regarding RMS's policies and procedures in making calls to cell phones and in obtaining and tracking consent to make such calls. Class Counsel also learned information regarding the number of telephones that RMS called and the number of calls made as they relate to the claims in this case. As a result, Class Counsel were well-positioned to evaluate the strengths and weaknesses of their case, as well as the appropriate basis upon which to settle it.

   **2. The Settlement Provides Significant Benefits For Settlement Class Members And Treats All Settlement Class Members Fairly.**

22. The Settlement requires RMS to pay $1,500,000, out of which Settlement Class Members who submit a valid and timely claim form will receive a cash award. The claim for

money is simple and straightforward. Settlement Class Members need only fill out a simple one page form. Each class member who submits a valid claim will receive $125 or a *pro rata* amount of the Fund if, after deducting Settlement Costs, the balance in the Fund is insufficient to pay the $125 amount to each class member, *see* Paragraph 11(b).

### 3. The Settlement Is Fair And Reasonable In Light Of The Alleged Claims And Defenses.

23. While Plaintiff and Class Counsel were confident in the strength of their case, they were aware of the risks inherent to litigation and the various defenses available to RMS, including the risk that the claims could not be resolved on a class-wide basis because the individual issues arguably eclipsed the common issues of the class and many putative class members agreed to individually arbitrate their claims. *Compare Meyer v. Portfolio Recovery Associates*, 696 F.3d 943 (9th Cir. 2012) (upholding certification of TCPA class) with *Jamison v. First Credit Servs.*, Inc., No. 12 C 4415, 2013 WL 1248306, at *15-17 (N.D. Ill. Mar. 28, 2013) (upholding denial of certification of TCPA class). In addition, Plaintiff recognizes that RMS has defenses on the merits. The risk that Settlement Class Members could end up recovering only a fraction of the settlement benefits, or nothing at all, was significant enough to convince Plaintiff and Class Counsel that the settlement reached with RMS outweighs the gamble of continued litigation.

### C. Provisional Certification Of The Settlement Class Is Appropriate.

24. This Court has not yet certified this case as a class action. For settlement purposes, Plaintiff respectfully requests that the Court provisionally certify the Class defined in the Agreement, Section II.A.23. RMS does not oppose class certification solely for the purposes of the Settlement. For the reasons set forth below, provisional certification is appropriate under Rule 23(a) and (b)(3).

1. **Rule 23(a)(1) – The Settlement Class Is So Numerous That Joinder of All Members Is Impracticable.**

25. The settlement class is the subscribers and/or users of the approximately 11,733 unique cell phones identified. The Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F. 2d 1326, 1333 (7th Cir. 1969); *see also, Newberg on Class Actions*, 3rd Ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of Class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

2. **Rules 23(a)(2) – The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.**

26. The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F. 2d 1013 (7th Cir. 1992). "Absolute commonality" is not required; commonality is satisfied if plaintiffs can demonstrate that a "common nucleus of operative fact" exists among the proposed class members. *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002). The commonality standard is "quite low." *Hernandez v. Midland Credit Mgmt., Inc*., 236 F.R.D. 406, 411 (N.D. Ill. 2006). A plaintiff may ordinarily satisfy the commonality requirement by showing that there is "at least one question of law or fact common to the class." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). Class certification will not be defeated solely because there are some factual variations among the grievances of the class members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Patterson v. General Motors Corp*., 631 F.2d 476, 481 (7th Cir. 1980).

27. The commonality requirement is satisfied here because there are questions of law and fact common to the Settlement Class that center on RMS's common practice of using an alleged automated telephone dialing system to call the Settlement Class. Numerous courts have held that the commonality requirement was satisfied in similar cases in which consumers alleged violations of the TCPA relating to calls to cellular telephones. *See Meyer v. Portfolio Recovery Associates, LLC*, 696 F.3d 943 (9th Cir. 2012) (preliminary certification for purposes of entering Fed.R.Civ.P. 23(b)(2) injunction); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. Nov. 9, 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 2010 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011), *Mitchem v. Illinois Collection Service*, 2009 C 7274, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. Jan. 3, 2011). In fact, the Seventh Circuit has recently affirmed summary judgment on behalf of a class under a similar provision of the TCPA. *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. Ill. 2013).

### 3. Rule 23(a)(3) – Named Plaintiff's Claims Are Typical Of The Claims Of The Settlement Class.

28. The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F. 2d 225, 232 (7th Cir. 1993) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *Parker v. Risk Management Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002); *see also*, Fed.R.Civ.P. 23(a)(3). Commonality and typicality are often treated together because the analyses of each are often interrelated. *See, e.g.*, *Parker*, 206 F.R.D. at 213; *see also*, *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 241 (N.D. Il. 2001) ("Typicality, the third requirement, is closely related to the question of commonality."). "Typicality is established when there is a 'sufficient

relationship . . . between the injury to the named plaintiff and the conduct affecting the class,' and the claims of the named plaintiff and those of the class 'are based on the same legal theory.'" Newberg, §3.13.

29. For virtually the identical reasons discussed in the preceding section, this element is also met. In this case, Plaintiff's TCPA claims, which are based on RMS's making of automated calls to Plaintiff, are reasonably coextensive with those of the Settlement Class. Rule 23(a)(3) is plainly satisfied in this case.

**4. Rule 23(a)(4) – Plaintiff and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.**

30. The determination that the "representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4), involve two considerations: (a) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (b) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S. Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

31. As set forth in the Declarations of Counsel (*Appendixes 2*), Plaintiff's counsel are experienced in consumer class actions, including class actions under the TCPA. In addition, Plaintiff has no interests in conflict with the Class. Therefore, the named Plaintiff and her counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

**5. The Settlement Class Is Appropriate Pursuant To Rule 23(b)(3).**

32. Class certification is appropriate under Rule 23(b)(3) where: (a) common questions of law or fact predominate over individual questions, and (b) a class action represents a superior method for the fair and efficient adjudication of the controversy. Because the claims arise from a standard practice, common questions predominate. Moreover, because the claims

are being certified for the purposes of settlement, there are no issues with manageability, and the resolution of thousands of claims in one action is superior to individual lawsuits and promotes consistency and efficiency of adjudication.

33. For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### D. The Proposed Notice Program Is Adequate.

34. Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. Manual for Complex Litig. (Fourth) § 21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L.Ed. 865 (1950).

35. The Notices attached to the Settlement Agreement as *Exhibits* B and C are clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. The Notices contain all of the information required by Rule 23, such as: the nature of the action; the class definition; a summary of the class claims and defenses; the process for submitting a claim form; the amount paid for a claim; the potential class representative fee and attorneys' fees and costs; the ability to enter an appearance; exclusion rights and deadlines; objection rights and deadlines; and the binding effect of a class judgment on members under Rule 23.

36. The Notice Plan is extensive and consists of both direct notice and publication notice. The direct notice plan provides individual notice to the best address the parties can

obtain given the following procedures: (a) United States Mail for Settlement Class Members identified via reverse look up; and (b) in the event the notice is returned undeliverable, notice shall be re-mailed to the forwarding address, if any, provided by the U.S. Postal Service. In addition to the direct notice, publication notice to the extent necessary to reach the class members, if any, who were not able to be identified via reverse look up. Finally, the Claims Administrator will establish and maintain the Website Notice website on which will be posted the Mail Notice, Claim Form, a copy of the Settlement Agreement, the Preliminary Approval Order, and any other materials the Parties agree to include.

37. Therefore, the parties proposed notice plan is consistent with the due process requirements incorporated in Rule 23(c)(2)(B).

## IV. CONCLUSION

38. For all of the foregoing reasons, Plaintiff respectfully submits that the Settlement Agreement and the settlement are sufficient to warrant notice thereof and a full hearing on the settlement.

39. The parties have agreed to a proposed preliminary approval order, attached to the Settlement Agreement and again hereto as *Appendix 3*, which:

   a. Sets a date for a final approval hearing ("Final Approval Hearing");

   b. Preliminarily certifies the Settlement Class for settlement purposes;

   c. Approves sending the proposed Class Notice in the form that is attached to the Settlement Agreement;

   d. Sets deadlines for mailing of the Class Notice, the filing of objections, the submission of requests for exclusion from the Settlement Class, and the filing of papers in connection with the Final Approval Hearing;

  e. Pending final determination of whether the Settlement should be approved, bar all persons in the Settlement Class, on a representative basis or in any other capacity, from commencing or prosecuting against RMS, or any of the Released Parties, any action, arbitration, or proceeding in any court, arbitration or tribunal asserting any of the Released Claims; and

  f. Pending final determination of whether the Settlement should be approved, stay all proceedings in the Action except those related to effectuation of the Settlement;

  WHEREFORE, Plaintiff respectfully requests that this Court enter an order in the form of *Appendix 3*, which contains the previously set deadlines.


                Respectfully submitted;

                /s/ Keith J. Keogh

Keith J. Keogh
Timothy J. Sostrin
Katherine M. Bowen
Keogh Law, Ltd.
55 W. Monroe, Suite 3390
Chicago, Illinois 60603
312.726.1092 (office)
312.726.1093 (fax)
Keith@KeoghLaw.com

Matthew W. Kiverts
Law Offices of Matthew W. Kiverts
27 North Wacker Drive, Suite 401
Chicago, Illinois 60606
312.632.1017 (office)
866.596.2210 (fax)
mkiverts@kivertslaw.com

*Attorneys for Plaintiff Isabel Lopera*

**CERTIFICATE OF SERVICE**

  I hereby certify this June 13, 2014 that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and as listed below and paper copies will be sent to those indicated as non-registered participants.

/s/ _____