UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

ISABEL M. LOPERA, on behalf of herself and
all others similarly situated,

        Plaintiff,

    v.                                  Civil Action No. 1:12-cv-09649

THE RECEIVABLE MANAGEMENT
SERVICES CORP.,

        Defendant.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, Isabel M. Lopera, individually and as representative of a Class of similarly situated persons, by Class Counsel, respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement"). Attached hereto as *Appendix 1*.

## I.      INTRODUCTION

On June 30, 2014, the Court granted preliminary approval of the Settlement. Doc. 108 and 109. Thereafter, and pursuant to the Court's order, direct individual notice was disseminated to the Class Members via First Class mail.[1] Additional notice was given to Class Members through print publication. Class members had until November 11, 2014 to request exclusion or object, and until November 18, 2014 to submit claims. Doc. 109.

As amply demonstrated below, the Settlement easily meets the standard for final approval. The Settlement, including its terms and underlying negotiations, is fair, reasonable and

---

[1] As set forth in the Declaration of Eric Robin of Kurtzman Carson Consultants LLC, attached hereto as *Appendix 2*, claim forms were mailed to 11,733 addresses on the Class member list. 3,705 were returned as undeliverable, with 24 of these returned with a forwarding address and re-mailed.

adequate. It was negotiated at arms'-length between Defendant and experienced class counsel, with the assistance of Honorable Morton Denlow (Ret.) at JAMS who is well known as a skilled mediator. Therefore the settlement is presumptively fair, reasonable, and adequate. Moreover, the Settlement Benefits are substantial and resolve uncertain claims. The Settlement required that Defendant pay up to $1,500,000.00 with each claimant receiving $125.

In the motion for preliminary approval, Class Counsel noted that the settlement was a great result for the class. The Class appears to agree with Class Counsel's assessment. Not only have there been no objections to any portion of the settlement and no requests for exclusion, the claim rate has been above average. A typical claim rate in a TCPA class action is around 5%. Here, however, the claims rate is 5.35% for Class Members. Moreover, as to the more than 8,00 Class Members that received the Notice Package in the mail, the claims rate was 8.23%. *See Appendix 2*. In other words, looking at those who received direct notice, the claim rate was exceptional. Therefore, Plaintiff and Class Counsel request this Court grant final approval to the Agreement.

## II.     OVERVIEW OF THE LITIGATION AND MEDIATION

### A.     The Litigation

Isabel Lopera filed a Class Action Complaint against Defendant The Receivable Management Services, Corp. ("RMS") on December 4, 2012, alleging that Defendant contacted Plaintiff and the class members on their cellular phones through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice without their prior express consent, in violation of the TCPA. Doc. 1.

Defendant denies all claims asserted in the Action and denies all allegations of wrongdoing.

The TCPA makes it, "unlawful for any person within the United States … to make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…" 47 U.S.C. § 227(b)(1)(A)(iii). Congress found that automated or prerecorded calls are a nuisance and an invasion of privacy. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

**B.**     **Plaintiff Thoroughly Investigated The Claims Of The Proposed Class.**

Prior to agreeing to the settlement, Plaintiff completed thorough and substantial discovery. Plaintiff and Class Counsel propounded written discovery, including requests for admission, interrogatories and two set of requests for production of documents. Plaintiff also issued numerous third-party subpoenas to obtain further information to investigate her claims. As a result, RMS produced data and documents regarding Plaintiff's claims and RMS' policies, practices and procedures concerning the use of its dialers, prerecorded messages and the number of persons that may have been called within the scope of this action. Class Counsel deposed two RMS corporate representatives and RMS deposed Plaintiff, Plaintiff's husband, Plaintiff's father[2], and Plaintiff's expert witness. In addition, Class Counsel engaged in numerous discussions with RMS's counsel regarding Plaintiff's claims.

After conducting written discovery, depositions of RMS's representatives, third party discovery, and production of an expert witness report, Plaintiff filed her Second Amended Motion for Class Certification, and supporting Memorandum. Doc. 66 and 67. After deposing one of Plaintiff's experts and prior to Defendant's filing its response, Class Counsel and RMS agreed to attend mediation with Honorable Morton Denlow (Ret.) at JAMS on December 16,

---

[2] Plaintiff filed motions for protective orders to quash RMS' deposition of plaintiff's father as well to quash telephone records relating to the third party calls. The Court substantially denied both motions. Doc. 33 and 55.

2013. Prior to mediation, the parties submitted detailed mediation briefs setting forth their respective views on the strengths of their cases.

At the mediation, the parties discussed their respective views of the law and facts and the potential relief from the proposed Class. The mediation did not result in a settlement. Subsequently, with the assistance of Judge Denlow, the parties were able to reach a class wide settlement.

### III.    THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT

#### A.  The Preliminary Approval Order.

On June 30, 2014, the Court granted preliminary approval of the Settlement. Doc. 108 and 109. In the Preliminary Approval Order ("Order"), this Court found that the proposed terms of the Settlement appeared to satisfy all of the elements of the Federal Rules of Civil Procedure 23(a) and 23(b)(3). *Id*. The Order required the parties to provide the class members with notice, set deadlines and procedures for submission of claims, requests for exclusion, and objections to the Settlement, and set December 2, 2014 for the final approval hearing. *Id*.

#### B.  The Sending of Class Notice.

This Court is advised that subsequent to the entry of the preliminary approval order, 11,733 notices of settlement were sent via First Class Mail. *See Appendix 2*.

The Notice Plan was extensive and consisted of both direct notice and publication. The direct notice plan provided individual notice via United States Mail for Settlement Class Members for whom RMS and the Claims Administrator identified a mailing address. First, RMS provided addresses which were reasonably obtainable. *Id*. at paragraph 4 and 8. For individuals for which RMS could not reasonably obtain a mailing address, the Claims Administrator

performed a reverse look-up of the cellular telephone number to attempt to identify the mailing address. *Id*. at paragraph 5-7.

In addition to direct notice, the publication notice was placed in print media (People Magazine) with the collective goal of reaching Class Members for whom a mailing address was not obtained. *Id*. at paragraph 13.

Finally, the Claims Administrator established a toll-free phone number and maintained a Website on which was posted the Class Notice, Claim Form, and Settlement Agreement and allowed for on-line claim submissions. *Id*. at paragraph 14-15

In addition, notice of the Settlement was sent to the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

## IV.     CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT.

There were 628 claim forms filed. *Id*. at paragraph 18. The Claims Administrator received no objections and no requests for exclusions. *Id*.

On October 28, 2014, by agreement of the parties, the Claims Administrator sent deficiency letters along with prepaid return envelopes to any claimant who did not complete all of the required information in the claim form in order to provide an opportunity to cure the deficiency. *Id*.

In addition, the Claims Administrator received 128 claim forms whose phone numbers did not match the original Class List. The parties agreed that the Class Administrator would send a new deficiency letter to those individuals to request if there was another possible phone number in order to compare it to the original list to insure that the claimant was given every possibility to partake in the class relief.  *Id*.

## V.     THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecommunc'ns, Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

### A.     The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997) the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rules 23(a) and 23(b) have been met. *Id.* at 621. On June 30, 2014, this Court found that the class satisfied all the requirements of Rule 23(a) and Rule 23(b)(3) when it granted Plaintiff's motion for preliminary approval. Doc. 108 and 109. Once the Court has determined that the requirements of Rule 23(a) and Rule 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 1128 F.3d 1074, 1082 (7th Cir. 1997).

There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions §11.41 (4th ed. 2002); *Goldsmith v. Technology*

6

*Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3 (N.D.Ill. Oct. 10, 1995); *Boggess v.*

*Hogan*, 410 F.Supp. 433, 438 (N.D. Ill. 1975).

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the

facts in the light most favorable to the settlement. *In re Ky. Grilled Chicken Coupon Mktg. &*

*Sales Practices Litig.*, 280 F.R.D. 364, 375 (N.D. Ill. 2011) (citing *Isby*, 75 F.3d at 1199). "[T]he

Court must not substitute its own judgment as to the optimal settlement terms for the judgment of

the litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

To evaluate fairness, courts consider the following factors: (1) the strength of the case for

plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity,

length and expense of the litigation; (3) the amount of opposition to the settlement by affected

parties; (4) the opinion of competent counsel; and (5) the amount of discovery completed at the

time of settlement. *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Applied to

this case, the relevant criteria support final approval of the settlement.

**B.      All of the Factors Weigh In Favor Of Final Approval.**

**1.      The Strength of Plaintiff's Case and the Risk, Expense, and Complexity and Likely Duration of Further Litigation.**

In a TCPA case, each class member would be entitled to $500 per call and up to $1,500 if

they can prove a willful violation of the Act and the Court determines that treble damages are

warranted. While Plaintiff submits that she has a good claim, Plaintiff recognizes that Defendant

has defenses to the claims including whether the Class members provided express consent to be

called, as well as defenses on the merits.

The Agreement provided that each class member who submitted a valid claim form

would receive up to $125 or a *pro rata* share of $1,500,000 if not sufficient to pay every claimant

$125, less the Settlement Amount Deduction[3]. The expected recovery per claimant of $125 exceeds similar TCPA settlements. *See Arthur v. Sallie Mae, Inc.*, No. 10cv198-JLR, 2012 U.S. Dist. LEXIS 132413, 2012 WL 4075238, at *1 (W.D. Wa. Sept. 17, 2012) (class claimants to receive about $100 each); *Bellows v. NCO Fin. Sys.*, No. 07cv1413-W(AJB), 2008 U.S. Dist. LEXIS 103525, 2008 WL 5458986, at *7 (S.D. Cal. Dec. 10, 1008) (class claimants to receive $70); and *Lemieux v. Global Credit & Collection*, Case No. 08cv 1012-IEG(POR), Dkt. No. 46, 2011 U.S. Dist. LEXIS 158173 (S.D. Cal. Sept. 20, 2011) (class claimants to receive $70).

Although Plaintiff and Class Counsel were confident in the strength of this case, there were risks inherent to litigation and the various defenses available to RMS, including the risk that the claims could not be resolved on a class-wide basis because the individual issues arguably eclipsed the common issues of the class and some putative class members potentially agreed to individually arbitrate their claims. Compare *Meyer v. Portfolio Recovery Associates*, 696 F.3d 943 (9th Cir. 2012) (upholding certification of TCPA class) with *Jamison v. First Credit Servs., Inc.*, No. 12 C 4415, 2013 WL 1248306, at *15-17 (N.D. Ill. Mar. 28, 2013) (upholding denial of certification of TCPA class).

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor.

The settlement satisfies the third *GE Capital* factor because no Class member has excluded themselves from the settlement and no Class member has objected to the settlement.

---

[3] Settlement Amount Deduction includes (i) the Settlement Administration Costs (ii) the Attorney Fee/Litigation Cost Award, if any, to Class Counsel (up to $450,000.00); and (iii) the Representative Plaintiff Award, if any, to the named plaintiff (up to $5,000.00). *Appendix 1*, §§ I.1.32; II.B.2.02; II.B.2.31; II.B.2.29. If any benefit checks provided to Class Members submitting a Valid Claim Form are unclaimed or uncashed, the value of those checks shall by distributed to a non-profit organization mutually-agreed upon by the Parties subject to Court approval for use only in providing education to consumers concerning debt collection or telecommunication privacy laws. *Id.*, at § II.B.3.08.

## 2. The Settlement Resulted From Extensive Arms-Length Negotiations.

As a leading treatise on class action jurisprudence explains, "…decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. *See also*, Section V(A) (there is an initial presumption of fairness when a settlement has been negotiated at arms-length by experienced counsel). The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. Newberg, §11.42.

Settlement was reached after Plaintiff completed thorough and substantial discovery which involved (1) written discovery requests to RMS (2) RMS's production of data and documents regarding Plaintiff's claims and RMS concerning the use of its dialers, prerecorded messages, and the number of persons that may have been called within the scope of this action (3) depositions of two of RMS's corporate representative (4) depositions of Plaintiff, her husband, and her father (5) numerous third party subpoenas and contested discovery motions; (6) production of Plaintiff's expert reports; (7) deposition of one of Plaintiff's experts; (8) filing of Plaintiff's amended motion for class certification and (9) JAMS mediation before United States District Court Magistrate Judge Morton Denlow (Ret.) and subsequent negotiations of the final terms, conditions and documentation.

Given the stage of proceedings, the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

### 3.    The Notice To Class Members Is Adequate.

The Notice Plan was extensive and robust. It consisted of both direct notice and publication. The direct notice provided individual notice to the best address RMS could reasonably obtain. If an address was not provided, the Claims Administrator used procedures to find the best address possible. The parties used three different reverse lookup for instances where RMS did not have an address associated with a telephone number. *Appendix 2*, at paragraph 6 and 7. The parties used three different reverse lookup vendors to determine as many addresses as possible for the class members.

The direct notice plan was supplemented with publication notice in the August 2014 edition of *People* magazine, available to the public on August 1, 2014. Finally, the Claims Administrator established and maintained a toll free number and Notice website on which the Class Notice, Claim Form, and Settlement Agreement were posted.

Under Federal Rule of Civil Procedure 23(c)(3), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. Manual for Complex Litig. (Fourth) §21.31 (2004). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

The Notice sent to the Class members was clear and straightforward, providing putative class members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information. *See Appendix 1 at Exhibit B*. The Notice contained all of the information required by Rule 23, such as: the nature of the action; the class definition; summary of the class claims and defenses; the amount paid for a claim; the potential

class representative fee and attorneys' fees and costs; ability to enter an appearance; exclusion rights; objection rights and binding effect of class judgment on members under Rule 23.

In order to obtain a Settlement Award, Settlement Class Members only had to complete a simple, one-page claim form (*See Appendix 1 at Exhibit C*) and provide it to the Claims Administrator via mail or submit it through the settlement website pursuant to Settlement Agreement. *See Appendix 1*, § III.B.2.21.

The high rate of claims illustrates the notice was highly effective and that the notice scheme fully complied with the due process requirements incorporated in Rule 23(c)(2)(B). Rule 23's advisory committee note states that the "mandatory notice pursuant to subdivision (c)(2) … is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed.R.Civ.P. 23(d)(2) advisory committee's note (*citing, Mullane*, 339 U.S. 306 (additional citations omitted).

## VI.    FINAL APPROVAL ORDER.

The parties have agreed to the form of the Final Approval Order, which was previously submitted to this Court with the Settlement Agreement. A copy of the proposed final order is also attached hereto as *Appendix 3*. The release that is incorporated into the Final Approval Order is a general release that is limited to claims, "that arise out of … the use … of any 'automatic telephone dialing system,' 'automatic dialer,' 'automated dialer,' 'dialer,' and/or an 'artificial or prerecorded voice' to make 'calls' to a cellular telephone number." *Appendix 1*, §§ 4.01-4.03.

## VII.    THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.

Pursuant to the Agreement, Class Counsel requests approval of 30% of the settlement amount, which is $450,000.00 inclusive of fees and costs.

### A.    Class Counsel's Requested Fee Is Reasonable.

Plaintiff's counsel are experienced class action attorneys, each of whom contributed their skills and expended resources in a coordinated effort that resulted in the settlement of this matter. The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the percentage of fund method. *In re Synthroid Mktg. Litig.*, 264 F. 3d 712 (7th Cir. 2001).

### 1.    30% of the Settlement Amount Is in Line with Fees in Similar Cases.

Attorneys who achieve a benefit for class members are entitled to be compensated for their services from that settlement. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Gaskill v. Gordon,* 160 F. 3d 361, 362 (7th Cir. 1998); *Florin v. Nationsbank, N.A.,* 34 F. 3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.,* 962 F. 2d 566, 572 (7th Cir. 1992) *("Cont'l I"); In re Cont'l Ill. Sec. Litig.,* 985 F. 2d 867, 868 (7th Cir. 1993) *("Cont'l II")*; *Kendrick v. Atcor, Inc.,* 1988 U.S. Dist. LEXIS 8389 (N.D. Ill. 1988).

In *Taubenfeld v. Aon Corp.*, the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> [W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Although it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation,

> information from other cases, and data from class-counsel
> auctions.

*Id.* 415 F. 3d 597, 599 (7th Cir. 2005) (citation omitted). In affirming an award of fees equaling 30% of the $7.25 million settlement fund plus expenses, the *Aon* court considered, among other things, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case. *Id*. at 600.

In considering a fee request, the court must do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d at 718.

This District has noted that "the Seventh Circuit strongly endorsed the percentage method of computing appropriate fee awards in class action common fund cases." *See Goldsmith v. Tech. Solutions Co.,* 1995 U.S. Dist. LEXIS 15093, *24 (N.D. Ill. 1995) (other citations omitted) (approving 33.33% fee award), *citing Cont 'l Ill. II,* 985 F. 2d 867. "'[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where that percentage of the benefit approach replicates the market." *Cooper v. IBM Pers. Pension Plan,* No. 99-829, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005). The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).

In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice*

*Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998). If this case were an individual case, the customary fee arrangement would be contingent, on the percentage basis, and in the range of 33 1/3% to 40% of the recovery. *See Kirchoff*, at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Limited Partnership v. Price Waterhouse, LLP,* 2001 WL 1568856 at *4 (N.D. Ill 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding class counsel the requested one-third of the common fund); *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40–41 (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed upon vary, with one-third being particularly common.").

This District has also recognized that a fee award of "33 1/3% is in fact in line with that which has, in previous cases, been approved," and "[t]hirty three percent appears to be in line with what attorneys are able to command on the open market in arm's length negotiations with their clients." *Id.* at 26–27. Notably, the Northern District has recognized the appropriateness of a fee of nearly 1/3 of the common fund in complex litigation and the historic approval of such fees in the Seventh Circuit. *See also Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *In re Lithotripsy Antitrust Litig.,* 2000 U.S. Dist. LEXIS 8143, **6-7 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards in class-action antitrust lawsuits."); *In re Spyglass, Inc. Sec. Litig.,* No. 99-c-5 12 (N.D. Ill. March 24, 2000) and *In re Spyglass, Inc. Sec. Litig.,* No. 99-cv-0512 (N.D. Ill. May 31, 2000) (33% fee award approved); *Rehm v. Eagel Fin. Corp.,* 1998

U.S. Dist. LEXIS 20015 (N.D. Ill. Dec. 8, 1998) (approving 33.3% fee request), *aff'd Rehm v. EagelFin. Corp.,* No. 96-2455 (N.D. Ill. Dec. 8, 1998) ("the 7th Circuit Court of Appeals, as well as the majority of other circuit courts have approved the use of the percentage of the fund method to award attorneys' fees in class action/common fund cases"); *Taubenfeld*, 415 F.3d at 598 (7th Cir. 2005) (affirming fee award of 33.3%); *Gaskill*, 942 F. Supp. 382, *aff'd* 160 F.3d 361 (7th Cir. 1998) (38% awarded); *In Re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, Case No. 05 CV 07097 (N.D. Ill. 2010) (Awarded $7.33 million for attorney fees, which is 33% of the common fund); s*ee also Appendix 4*, Chart of Securities Class Actions awarding fees of 33.3% of the Settlement Fund.

It is important to note that the TCPA is not fee shifting, which supports the application of approving fees based on a percentage of the settlement amount. The requested fee is also in line with similar fees awarded by district courts in TCPA class actions, including this Court. *Saf-T-Gard v Vanguard Energy Services, LLC., 12* C 3671 (N.D. Ill 2014) (this Court) (Awarding 33% of the common fund at Doc. 65); *Hanley v Fifth Third Bank,* 12 C 1612 (N.D. Ill) (Judge Castillo) (Awarding 33% of the common fund); *Saf-T-Gard v Seiko*, 09 C 776 (N.D. Ill. 2011) (Judge Bucklo) (Awarding 33% of the common fund); *Hinman v. M and M Rental Center* Inc., 06-cv- 01156, Doc. 225 (N.D. Ill. 2008) (Awarded 33% of the common fund plus costs); *CE Design, Ltd. v. Cy's Crabhouse,* 07 C 5456 (N.D. Ill. Sept. 22, 2010) (Judge Kennelly) (Awarded 33% of the common fund plus costs. Doc. 373); *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Judge Nordberg) (Awarded 33% of the common fund plus costs. Doc. 33);*CE Design,*

*Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Judge Darrah) (Awarded 33% of the common fund plus costs. Doc. 32-2)[4].

While many of courts in this Circuit[5] have questioned the use of the lodestar analysis either for determining the proper amount of fees or as a "cross-check," the attorneys' fee award that Class Counsel seeks is equally reasonable under the lodestar method. *See Schulte*, 805 F. Supp. 2d at 598; *see also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F.Supp.2d 1028, 1037-38 (N.D. Ill. 2011) ("It is not a requisite of reasonable attorneys' fees that Class Counsel engage in laborious litigation over many years. Instead, it is a question of what the Class Members and Counsel would have agreed to *ex ante* in arm's length negotiation."). Yet, in *Pearson v. NBTY, Inc.*, Nos. 14-1198, -1227, -1245, -1389 (7th Cir. Nov. 19, 2014) the Court was critical of a settlement of fees in a settlement that provided reversion to defendant. As such, should the Court desire to perform such analysis, the lodestar approach would certainly confirm the reasonableness of the fees and award requested here.

To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to "multiply[] a reasonable hourly rate by the number of hours reasonably expended."

---

[4] Other jurisdictions are in accord in TCPA settlements. *Locklear Electric, Inc. v. Norma L. Lay*, 09 C 0531 (S.D. Ill.) (Reagan, J.) (Awarded 33% of the common fund plus costs. Doc. 67); *Accounting Outsourcing, LLC. v Verizon Wireless,* 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) (Awarded $2,314, 328, which is in excess of 35% of the common fund, plus costs); *Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616 (Richmond County, Ga. April 25, 2001) (Awarded $3,931,035.62, which was 33% of the common fund plus costs).

[5] In the Seventh Circuit the use of a lodestar cross-check is not required. *Williams*, 658 F.3d at 636. ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *see also Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."); *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (recognizing that "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration and holding that it "is unnecessary to resort to a lodestar calculation to reinforce the same conclusion").

*Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010). A reasonable hourly rate should be in line with the prevailing rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 489 (7th Cir. 2009); *see also Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (finding the attorney's actual billing rate for comparable work to be presumptively appropriate). Once calculated, the Court must adjust that total by the use of a multiplier, which accounts for the risk of loss Class Counsel faced when embarking on the litigation. *In re Trans Union Corp. Privacy Litig.*, 629 F.3d at 746.

Class Counsel's lodestar in the instant case is reflected in the following chart:

Keogh Law, Ltd.

| Staff | Role | Years in Practice | Time | Rate | total | |
|---|---|---|---|---|---|---|
| Keith J. Keogh | Partner | 15 | 389.4 | $500 | $ | 194,700.00 |
| Timothy J. Sostrin | Associate | 7 | 59.1 | $375 | $ | 22,162.50 |
| Craig Shapiro | Associate | 11 | 1.8 | $425 | $ | 765.00 |
| Michael Hilicki | Associate | 20 | 1 | $500 | $ | 500.00 |
| Katherine Bowen | Associate | 2 | 36.8 | $200 | $ | 7,360.00 |
| Matthew Seckel | Paralegal | 6 | 10.9 | $150 | $ | 1,635.00 |
| | | | | | $ | 227,122.50 |
| | | | | | | |
| | | | | Total: | $ | 227,122.50 |

*See Appendix 5,* Declaration of Keith J. Keogh.

In addition to fronting the above fees, Keogh Law has also paid $27,681.20 in expenses, which do not include charges for copies or legal research. *Id.* The total of fees and cost incurred by Keogh Law are $254,803.70.

In addition, Co-Class Counsel, Matthew Kiverts of the Law Offices of Matthew W. Kiverts has spent 69.20 hours at $400 an hour for a total of $27,680.00. *See Appendix 6,*

Declaration of Matthew W. Kiverts. The total fees and costs incurred for both firms is $282,483.70.

Both the market based percentage approach and the lodestar cross-check support the reasonableness of the fee request. A multiplier applied to lodestar in this case would be 1.6, which is reasonable and fair in light of the degree of risk. *See e.g.*, *Cont'l Ill. I*, 926 F.2d at 569 (reversible error found where district court refused to award a risk multiplier); *Florin*, 34 F. 3d at 565 (risk multiplier mandated in class settlements where counsel had "no sure source of compensation."). Awarding fees above the lodestar is appropriate where the class members receive a significant recovery, and the "purpose of the statute is actually being fulfilled." *Seidat v. Allied Interstate, Inc.,* No 03 C 975 (N.D. Ill.) (Final Approval Order, Feb. 24, 2004) (Guzman, J.).

In addition, Class Counsel assumed a significant risk of non-payment in initiating and prosecuting this case given the novelty of legal issues involved and the vigorous defense that Defendant and its highly skilled counsel had available, and were prepared to raise in this litigation should it have proceeded. *See Appendix 5,* Declaration of Keith J. Keogh at para. 28.

For example, the TCPA is non-fee shifting and there is a large risk of not certifying the class, which has happened in some of Class Counsels cases. *See Warnick v. Dish Network, LLC*, 1:12-cv-1952, CO, Class Denied 6.27.14, Dkt No 238, Class Denied with Prejudice 10.30.14, DKt No 259. *Id*. at 29. *Dish* is set for trial in March 2015 in Colorado for 8 calls at issue where the court has already ruled there was no willful violation. As such, the maximum value of that case is $4,000.00. *Id*. at 29. *See also Jamison v First Credit Services, Inc.* et al, 1:12-cv-4415, NDIL, Reconsideration of Class Denial entered 7.29.13, Dkt No 120. Both *Warnick* and *Jamison* were decided after significant time and money was invested with *Warnick* including a

two day evidentiary hearing with multiple experts for plaintiff in Colorado and numerous out of town depositions and motion practice. *Id*. at 29.

As such, to the extent lodestar is relevant, a multiplier should be used to compensate for the risk. Other courts have awarded fees that resulted in much higher multiples of the lodestar. *See Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D. N.Y. 1997) (applying multiplier of 5.5) *Willson v. New York Life Insurance Co.*, 1995 N.Y. Misc. LEXIS 652, *94 (S.Ct. 1995) (awarding fee that resulted in multiple of 4.6 times the lodestar), *citing Weiss v. Mercedes-Benz of No. American, Inc.*, 899 F. Supp. 1297 (D. N.J., 1995) (awarding fee that resulted in multiple of 9.3 times the lodestar); *In re RJR Nabisco, Inc.*, Sec.Litig., [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) P 96,984, at 94,267 (S.D. N.Y. 1992) (multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D. N.Y. 1991) (multiplier of 8.74); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 202 Cal. Rptr. 389 (1984) (fee award was 12 times the lodestar); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp.2d 434, 439, n. 6 (D. Md. 1998) (noting that multipliers of 3 - 4.5 have been common over the years).

In light of the work performed in this matter, and the actual time and expenses incurred by Class Counsel, a multiplier of less than two is on the low end of such multipliers and is reasonable, particularly as it does not account for time that will be incurred by Class Counsel in insuring that the settlement is implemented according to its terms, and responding to additional inquiries from Class members, which will be at least 10-20 hours. Accordingly, Class Counsel believes the amount requested is reasonable and requests approval of this amount by the Court.

**2. No Class Member Objected to the Attorneys' Fees and Expenses Requested.**

As noted above, out of 11,733 Class Members, no objections to counsel fees and costs were filed. *See Appendix 2*. Based on the foregoing, the Court should grant Class Plaintiff's request for attorneys' fees (inclusive of expenses) in the amount $450,000.00.

## VIII. THE COURT SHOULD ALSO APPROVE THE REQUESTED SERVICE AWARD.

Class Counsel also requests that the Court approve a service award in the amount of $5,000.00 to Isabel Lopera for her service as Class Representative.

The Notice informed the Class of this request and no objections to the proposed service award were received. Courts have approved service awards on the basis that Named Plaintiffs in class actions take risks and perform services for the benefit of the Class. *See* Albert Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.). Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." *In re Cont'l I*, 962 F. 2d 571. Since *In re Cont'l I*, service awards for named plaintiffs in class actions have been regularly granted and upheld in this Circuit. *See Cook*, 142 F. 3d 1016 (7th Cir. 1998); *Saf-T-Gard v Seiko,* 09 C 776 (N.D. *Saf-T-Gard v Seiko,* 09 C 776 (N.D. Ill. 2011) (Judge Bucklo) ($12,500 to named plaintiff in TCPA class); *In Re Ameriquest Mortgage Co.* at ¶12 (Awarded service payments of $7,500 to each of the 87 named plaintiffs.); *Gibson & Company Insurance Brokers, Inc. v. QFA Royalties LLC.*, 06-cv-05849-PSG-PLA Document 212 (C.D. Ca. 2009) ($15,000 to the named plaintiff for service payment in TCPA class settlement); *Nicholson v Hooters of Augusta, Inc.*, 95-RCCV-616 (Richmond County, Ga. April 25, 2001) ($15,000 to the named plaintiff in a TCPA class action for service payment).

In fact the Seventh Circuit was critical of a $7,500 incentive award in a TCPA case as being too small. *Ira Holtzman, C.P.A, & Associates Ltd. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014). In *Turza*, the court described that award as a disincentive award. Plaintiff invested time and energy working with counsel, responded to substantial discovery, had her husband and father be deposed because of this case and carried to her potential detriment and the benefit of the Class the substantial risk of nonrecovery. For her willingness to represent the Class and aid in the prosecution of this matter and for its ultimately fruitful efforts, on behalf of the Class, Plaintiff has earned the requested service award.

IX.     **CONCLUSION**

For all the reasons set forth above, Plaintiff individually, and as representative of the Class, by Class Counsel, requests that this Honorable Court grant final approval of the Agreement and enter the proposed final approval order attached hereto as *Appendix 3*.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order in the form of *Appendix 3*.

Respectfully submitted;


/s/ Keith J. Keogh

Keith J. Keogh
Timothy J. Sostrin
Katherine M. Bowen
Keogh Law, Ltd.
55 W. Monroe, Suite 3390
Chicago, Illinois 60603
312.726.1092 (office)
312.726.1093 (fax)
Keith@KeoghLaw.com

Matthew W. Kiverts
Law Offices of Matthew W. Kiverts
27 North Wacker Drive, Suite 401
Chicago, Illinois 60606

312.632.1017 (office)
866.596.2210 (fax)
mkiverts@kivertslaw.com

*Attorneys for Plaintiff Isabel Lopera*